UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
AJAY AJAY,                                               :
                                                        :      **MEMORANDUM DECISION AND**
                                  Petitioner,            :      **ORDER**
                                                        :
           - against -                                  :      26-cv-0676 (BMC)
                                                        :
RAUL MALDONADO, in his official                         :
capacity as Warden, Brooklyn Metropolitan               :
Detention Center;  *et al.,*                            :
                                                        :
                                  Respondents.          :
-------------------------------------------------------- X

**COGAN**, District Judge.

Petitioner Ajay Ajay, an Indian national, seeks a writ of habeas corpus under 22 U.S.C. §

2241 ordering his immediate release from U.S. Immigration and Customs Enforcement ("ICE")

detention, or in the alternative, a bond hearing.  Petitioner entered the country unlawfully and

was detained and placed into removal proceedings after expressing a fear of returning to India, in

accordance with 8 U.S.C. § 1225(b)(1).  Although petitioner was granted temporary

humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), it expired shortly before ICE took him back

into custody.  The question in this case is whether the expiration of parole causes his status to

"snap back" to where it was before he was paroled, i.e., to § 1225(b)(1), or, instead, whether the

granting of parole, even after it has expired, changes his status to detention under 8 U.S.C. §

1226(a).  If it is the former, his detention is mandatory.  If it is the latter, he is entitled, at least, to

a hearing on bail.

I hold that as a matter of statutory construction of § 1182(d)(5)(a), an expired parolee's

status reverts to what it was before he was granted parole.  That makes petitioner's detention

mandatory under § 1225(b)(1), and he is not entitled to habeas corpus relief.

**BACKGROUND**

The following facts are undisputed. Around November 2024, petitioner crossed the U.S.-Mexico border without valid entry documents, and U.S. Customs and Border Protection ("CBP") apprehended him shortly thereafter. CBP issued him an expedited removal order and subjected him to mandatory detention under 8 U.S.C. § 1225(b)(1). Petitioner claimed a fear of return to India, however, and was subsequently referred for an interview by an asylum officer in accordance with that provision. Ultimately, an immigration judge ("IJ") found his fear of return credible. Petitioner's expedited removal order was cancelled, and petitioner was placed into removal proceedings under 8 U.S.C. § 1229a to adjudicate his asylum application.

On January 18, 2025, the Department of Homeland Security ("DHS"), through its investigative component ICE, granted petitioner a temporary one-year humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). By its terms, that parole expired on January 18, 2026. On February 11, 2026, an IJ sustained the charges of removability at petitioner's initial master hearing because his application for relief from removal was incomplete. The IJ set February 25, 2026, for petitioner to submit a complete application for relief from removal and to appear for another master calendar hearing.

Before he could appear for that hearing, however, on January 26, 2026, the Nassau County Police Department arrested petitioner for reckless endangerment of property under New York state law.[1] The police notified ICE, which determined that petitioner lacked lawful status. ICE then took petitioner into custody pursuant to a warrant, and he is currently being held in the Metropolitan Detention Center in Brooklyn, New York.

---

[1] The Court has not been given any details of what petitioner did that resulted in this charge.

Petitioner seeks a writ of habeas corpus on these grounds: respondents detained petitioner in violation of 8 U.S.C. § 1226; petitioner's detention without a hearing violates his procedural and substantive due process rights; and his detention violates the Administrative Procedure Act ("APA").[2]

**DISCUSSION**

## I. Legal Standard

Habeas corpus "stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, 562 U.S. 86, 91 (2011); see also Ozturk v. Hyde, 136 F.4th 382, 393 (2d Cir. 2025). The Court may issue a writ under Section 2241 "whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." Lopez v. Sessions, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing Demore v. Kim, 538 U.S. 510, 516-17 (2003)).

## II. Detention Under § 1225

"An alien present in the United States who has not been admitted . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Sections 1225(b)(1) and 1225(b)(2) prescribe rules governing the initial treatment of applicants for admission. See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018).

Section 1225(b)(1) applies to aliens who have not been admitted or paroled, and who have been "initially determined to be inadmissible due to . . . lack of valid documentation." Id. (citing § 1225(b)(1)(A)(i)). "Aliens covered by § 1225(b)(1) are normally ordered removed

---

[2] Habeas corpus is the proper remedy for challenging petitioner's detention here, not the APA. See Trump v. J. G. G., 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring); 5 U.S.C. § 704.

'without further hearing or review' pursuant to an expedited removal process," unless they "indicate[] an intention to apply for asylum . . . or a fear of persecution," in which case they "shall be detained for further consideration of the application for asylum." Id. (citing §§ 1225(b)(1)(A)(i), (A)(ii), (B)(ii)).

"Section 1225(b)(2) is broader.  It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." Id. (citing §§ 1225(b)(2)(A), (B)). Aliens covered under § 1225(b)(2) "'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country." Id. at 288 (quoting § 1225(b)(2)(A)).

"Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" Id. (quoting 8 U.S.C. § 1182(d)(5)(A)).  "Such parole, however, 'shall not be regarded as an admission of the alien.'" Id. (quoting § 1182(d)(5)(A)).  "Instead, when the purpose of the parole has been served, 'the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" Id. (quoting § 1182(d)(5)(A)).  Although § 1182(d)(5)(A) "is not an independent authority to detain parolees following the expiration of parole," Rodriguez-Acurio v. Almodovar, No. 25-cv-6065, 2025 WL 3314420, at *18 (E.D.N.Y. Nov. 28, 2025) (citing Clark v. Martinez, 543 U.S. 371, 385 (2005)), the statute's reference to "return[ing the parolee] to the custody from which he was paroled" requires us to look back to why petitioner was detained in the first place – and, as petitioner admits, that was pursuant to § 1225(b)(1), not § 1226.

4

Petitioner relies on Jennings to argue that notwithstanding the expiration of his parole, he still enjoys status under §1226, including the right to a bond hearing. But Jennings is inapposite. First, the issue in Jennings was whether courts could imply a recurring six-month bond hearing requirement for immigration detentions, an issue not present here. Second, and more importantly, the petitioner in Jennings had been a lawful permanent resident since 1987. Unlike our petitioner, Jennings thus never crossed the border without documentation or met any of the requirements for § 1225(b)(1) status. The only way ICE could deport him was through § 1226 or some other provision of immigration law. The "snap-back" provision in § 1182(d)(5)(A), which requires a parolee whose parole has expired to "forthwith return or be returned to the custody from which he was paroled," was never analyzed in Jennings. True, the Supreme Court discussed a hypothetical distinction between what kinds of aliens may be detained under § 1225 and § 1226, but that was only dictum offered to illustrate the impropriety of the six-month bond hearing requirement that the lower courts had ordered. It does not apply to the issue before this Court.

In our case, the "snap-back" provision § 1182(d)(5)(A) does not bring petitioner back to the status of some amorphous class of aliens. Rather, the statute specifically refers to the "*custody* from which *he* was paroled." See § 1182(d)(5)(A) (emphasis added). This language requires us to look specifically at whence petitioner came – in this case, § 1225(b)(1) – and to place him there.

Petitioner asserts that because § 1225(b)(1) applies only to applicants for admission who have not been "paroled," it no longer applies to him, because he was paroled. However, this argument fails, because it ignores the fact that petitioner's parole expired on January 18, 2026,

5

shortly before he was arrested by New York police and placed into the custody of ICE on January 26, 2026.  Petitioner was therefore no longer "paroled."

Petitioner cites to several district court cases that suggest that *any* applicant for admission who has been "living in the United States outside parole and is later apprehended is detained under section 1226."  See, e.g., Cabrera Martinez v. Marich, No. 25-cv-1110, 2025 WL 3771228, at *13 (W.D.N.Y. Dec. 31, 2025).  But such an interpretation would violate congressional intent. The Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C, 110 Stat. 3009, 3009-546, "did away with the distinction between 'exclusion' and 'deportation' proceedings."  Saamishvili v. Flanagan, No. 25-cv-6178, 2026 WL 377574, at *1 (E.D.N.Y. Feb. 11, 2026).  Prior to the IIRIRA, "exclusion proceedings applied to aliens encountered at the border and deportation proceedings applied to aliens later encountered within the border."  Id. (citing Ibragimov v. Gonzales, 476 F.3d 125, 130 n.11 (2d Cir. 2007)). "Deportation proceedings afforded aliens 'a number of substantive rights not available to the alien who is denied admission in an exclusion proceeding.'"  Id. at *2 (quoting Landon v. Plasencia, 459 U.S. 21, 26 (1982)).  Because this more favorable treatment gave aliens a "perverse incentive to enter at an unlawful rather than a lawful location," see Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 140 (2020), post-IIRIRA, "both aliens arriving at the border and aliens already present in the United States without inspection are deemed 'applicants for admission,' . . . who must 'be inspected by immigration officers' to determine their admissibility."  Saamishvili, 2026 WL 377574, at *2 (quoting Cruz-Miguel v. Holder, 650 F.3d 189, 197 (2d Cir. 2011)).

Granting petitioner "a number of substantial rights" such as a bond hearing available under § 1226 but not § 1225, solely because ICE detained petitioner *within* the border, would

6

give aliens exactly the "perverse incentive to enter at an unlawful rather than a lawful location" that Congress sought to prevent.[3]

## III. Due Process

Petitioner's due process arguments fare no better, because even though petitioner was paroled into the country under § 1182(d)(5)(A), petitioner never effected an "entry" into the United States.  See Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 ("[A]liens who arrive at ports of entry – even those paroled elsewhere in the country for years pending removal – are 'treated' for due process purposes 'as if stopped at the border.'").  An alien who never enters the country is entitled to only the due process that Congress provides.  See id. ("[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.");  U.S. ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.").  And as discussed above, Congress has not authorized a bond hearing for an alien detained under § 1225(b)(1).

---

[3] Petitioner also argues that the Government's "novel and expansive construction of § 1225(b)(1) is inconsistent with the . . . historical application of the statute."  To the extent petitioner is arguing that prior administrations' choice not to detain aliens within the country under § 1225 suggests that Congress never intended § 1225 for that purpose, "the government's past practice has little to do with the statute's text.  The text says what it says, regardless of the decisions of prior Administrations.  Years of consistent practice cannot vindicate an interpretation that is inconsistent with a statute's plain text."  Buenrostro-Mendez v. Bondi, 166 F.4th 494, 506 (5th Cir. 2026) (citing Pereira v. Sessions, 585 U.S. 198, 204 (2018)). The Executive branch may have all kinds of political reasons for applying the laws in particular ways, but courts must eschew any concerns other than the proper application of the statutes before them.

**CONCLUSION**

Because petitioner is currently subject to mandatory detention under 8 U.S.C. § 1225(b)(1), he has no right to habeas corpus relief.  His petition is denied.

**SO ORDERED.**

_Brian M. Cogan_
_____
U.S.D.J.

Dated: Brooklyn, New York
April 17, 2026